IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARCIA L. LANING, *et al.*,          :

      Plaintiffs,

    v.                                                   :

BRIAN DOYLE, *et al.*,

      Defendants.          :

Case No. 3:14-cv-24

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
(DOC. #23)

---

Plaintiffs, Marcia and Franklin Laning, filed suit against Officer Brian Doyle,

Sergeant John Doe, Police Chief Robert Schommer, and the City of Huber Heights,

Ohio, alleging various constitutional violations and state law claims arising out of

Officer Doyle's arrest of Marcia Laning ("Laning"). This matter is currently before

the Court on Defendants' Motion for Judgment on the Pleadings, Doc. #23. For

the reasons set forth below, that motion is sustained in part and overruled in part.

I.      **Background and Procedural History**

According to the Amended Complaint, Doc. #19, Huber Heights police

officer Brian Doyle arrested 63-year-old Marcia Laning on the afternoon of January

3, 2013. Officer Doyle followed Laning as she turned left out of a grocery store

parking lot onto Brandt Pike, and then turned right, into the parking lot of a strip mall where her office is located.  After she turned into the strip mall parking lot, he activated the lights on his police cruiser.  She maintains that she did not immediately realize that he was trying to pull her over.  She continued slowly driving through the parking lot for a short distance, and then backed her car into a parking spot outside her office.  As she got out of her car with her dog in her arms, Officer Doyle allegedly drew his taser, pointed it directly at her, and threatened to tase her.

At Officer Doyle's request, Laning put the dog back in the car.  When she asked why she was being detained, he refused to provide an explanation.  Instead, he allegedly yanked her off her feet, slammed her against the hood of the cruiser, pressed his weight against her, handcuffed her, and placed her in the back of the cruiser.  Rather than let her call someone to pick up the dog, Officer Doyle arranged to have the dog sent to the pound because she hadn't "incentivized" him to do otherwise.  He also had her car towed and impounded.

Laning states that, during the transport to the jail, she was terrified and crying.  Officer Doyle allegedly drove erratically and did "donuts" in a fire station parking lot.  She maintains that he repeatedly taunted her, making comments such as "You think that, just because you're an old lady, that means we have to be nice to you, trust me we don't," and telling her that her husband "was probably glad to get rid of her for a while because she was such a pain in the ass."  When they

2

arrived at the Montgomery County Jail, he allegedly told her, "I didn't search you *everywhere*, but they will."  Doc. #19, PageID##164-65.

Officer Doyle charged Laning with Resisting Arrest, Failure to Comply with the Order of a Police Officer, and a traffic lane violation.  She was released on bond several hours later.  Laning pled not guilty to all of the charges.  The prosecutor eventually dismissed the charges of Resisting Arrest, and Failure to Comply with the Order of a Police Officer.  At trial, Laning was found not guilty of the traffic lane violation.

On December 23, 2013, Marcia and her husband, Franklin Laning, filed suit in the Montgomery County Court of Common Pleas.  Defendants removed the case to federal court on the basis of federal question jurisdiction.  The Amended Complaint, Doc. #19, asserts the following ten causes of action:

1. "42 U.S.C. § 1983 – Unlawful Seizure, Detention, Search and Arrest (Violations of First and Fourth Amendments to the United States Constitution and comparable portions of the Ohio Constitution)";
2. "42 U.S.C. § 1983 – Unreasonable and Excessive Force (Violations of the Fourth Amendment to the United States Constitution, as well as comparable portions of the Ohio Constitution)";
3. "Municipal and Supervisory Liability (Section 1983, the Fourth Amendment[] to the United States Constitution and the Constitutional and common law of the State [of] Ohio)";
4. "Malicious Prosecution (Violations of the Fourth Amendment to the United States Constitution, as well as comparable portions of the Ohio Constitution)";
5. "False Arrest (Violations of the Fourth Amendment to the United States Constitution, as well as comparable portions of the Ohio Constitution)";
6. "Retaliation in Violation of the First Amendment ([42] U.S.C. Section 1983)";
7. "Assault and Battery (42 U.S.C. 1983)";

8. "Assault and Battery (Pendent [Supplemental] claims of assault and battery under Ohio law)";

9. "Loss of Consortium (Pendent [Supplemental] claim under Ohio state law)"; and

10. "Intentional Infliction of Emotional Distress (Federal and State Claim)".

Plaintiffs seek compensatory and punitive damages, attorney fees and costs. Defendants have filed a Motion for Judgment on the Pleadings, Doc. #23, asking the Court to dismiss each of these claims under Federal Rule of Civil Procedure 12(c).

## II.    Federal Rule of Civil Procedure 12(c)

Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) are analyzed under the same standard as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). However, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* at 582 (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A "legal conclusion couched as a factual allegation" need not be accepted as true, and a mere recitation of the elements of a cause of action is insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## III. Consideration of Police Cruiser Dash Cam Video

As an initial matter, the Court must determine whether, at this stage of the proceedings, it will consider the video of the January 3, 2013, encounter, as recorded by the dashboard camcorder mounted inside Officer Doyle's cruiser. Defendants submitted the video in support of their Motion for Judgment on the Pleadings. After the Court sustained Defendants' motion for leave to manually file the exhibit, Doc. #26, Plaintiffs filed objections, arguing that the Court should not consider the video in ruling on the pending motion. Doc. #27.

In determining the sufficiency of the allegations in a complaint, a court may consider exhibits attached to a motion for judgment on the pleadings, without

5

converting it to a motion for summary judgment, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

In ruling on a motion to dismiss or a motion for judgment on the pleadings, a court may also take judicial notice of public records, including videotapes. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008); *McGee v. City of Cincinnati Police Dep't*, No. 1:06-cv-726, 2007 WL 1169374, at *1 n.2 (S.D. Ohio Apr. 18, 2007).  However, unless the videotape "blatantly contradict[s]" the allegations in the complaint, the court must still accept those allegations as true. *See Garcia v. Does*, 764 F.3d 170, 180 (2d Cir. 2014) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss").

Here, the Amended Complaint explicitly refers to the videotape of the incident, alleging that the video was widely distributed, and that Laning's clients questioned her about it.  Doc. #19, PageID##166-67.  Plaintiffs maintain, however, that because it is mentioned only briefly and is not central to Laning's claims, the Court should not consider it.

In the Court's view, regardless of whether the videotape is central to Laning's claims, there are other reasons why it should not be considered at this stage of the litigation.  Defendants argue that the videotape conclusively contradicts Plaintiffs' allegations that Laning did nothing to resist arrest, and that

6

Officer Doyle drove erratically and did donuts in the fire station parking lot while transporting Laning to the jail.  The Court disagrees.

As Plaintiffs note, the videotape does not fully depict the entire encounter. For example, because Laning is off camera when she first exits her car, it is not clear what might have prompted Officer Doyle to threaten to tase her.  Then, although the videotape shows Officer Doyle placing her on the hood of the cruiser as he attempts to handcuff her, it is not clear whether Laning's feet are still on the ground.  The Amended Complaint alleges that they were not.  Therefore, although it looks as if Laning is struggling and resisting, it could also be that she was simply trying to maintain her balance.  In addition, Plaintiffs correctly note that portions of the videotape appear to be missing, and the audio portion of the videotape is not always clear.

In *Jones v. City of Cincinnati*, the court held that, even though a videotape of a police encounter could be considered in connection with a motion to dismiss, the district court was not required to do so where the videotape "captures only part of the incident and would provide a distorted view of the events at issue." 521 F.3d at 562.  For the reasons cited above, the Court finds that it is inappropriate to consider the videotape in connection with the pending motion.  It is better viewed in connection with a later-filed motion for summary judgment, once discovery has been completed.

7

## IV.    Analysis

Defendants argue that if even the Court chooses not to consider the videotape at this stage of the litigation, it should grant their Motion for Judgment on the Pleadings, based on the insufficiency of the allegations in the Amended Complaint.

### A.    Parties

Plaintiffs' Amended Complaint names four defendants: (1) Brian Doyle, in his individual and official capacity; (2) Sergeant John Doe, in his individual and official capacity; (3) Police Chief Robert Schommer, in his individual and official capacity; and (4) the City of Huber Heights, Ohio.  As the Supreme Court explained in *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), whereas an individual-capacity suit seeks to impose personal liability on a government official for actions taken under color of state law, an official-capacity suit is the equivalent of an action against the governmental entity of which the officer is an agent.

Here, because the City of Huber Heights is also a named defendant, the official-capacity claims against Doyle, Doe, and Schommer are duplicative, and will be dismissed on that basis.  *See Thorpe ex rel. DT v. Breathitt Cnty. Bd. of Educ.*, 932 F. Supp. 2d 799, 802 (E.D. Ky. 2013) ("when a § 1983 complaint asserts a claim against a municipal entity and a municipal official in his or her official capacity, federal courts will dismiss the official-capacity claim.").  Plaintiffs concede that this is appropriate.

8

**B.    Claims**

Plaintiffs' Amended Complaint asserts ten causes of action but, as

Defendants note, many of those counts include multiple claims against multiple

defendants.  Defendants have moved for judgment on the pleadings on all claims.

For the sake of clarity, the Court will address Defendants' arguments on a count-

by-count basis, rather than in the order presented in the motion.

**1.    Count I:  "42 U.S.C. § 1983 - Unlawful Seizure, Detention, Search
and Arrest (Violations of First and Fourth Amendments to the United
States Constitution and comparable portions of the Ohio
Constitution)"**

Count I of the Amended Complaint asserts a claim under 42 U.S.C. § 1983

for alleged violations of Laning's First and Fourth Amendment rights under the

United States Constitution, and comparable portions of the Ohio Constitution.

Section 1983 provides an avenue of recovery against state actors who subject

individuals to the deprivation of federal rights.  This statute "'is not itself a source

of substantive rights,' but merely provides 'a method for vindicating federal rights

elsewhere conferred.'"  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting

*Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  In order to recover under

§ 1983, a plaintiff must prove that the defendant, while acting under color of state

law, violated rights secured by the Constitution or laws of the United States.  See

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

### A.    Scope of Claim Narrowed

As an initial matter, the scope of this claim, as pled, can be narrowed in three respects.  First, to the extent that Laning alleges that Officer Doyle violated her First Amendment right to freedom of speech by arresting her in retaliation for protesting that she had done nothing wrong and for asking why she was being detained, this claim is duplicative of Count VI.  Therefore, the Court dismisses any allegations in Count I that implicate the First Amendment.

Second, although the Amended Complaint, Doc. #19, alleges that "Defendants were acting under the color of law," (¶ 98), that "Defendants" acted in a manner warranting the imposition of punitive damages (¶ 107), and that Plaintiffs suffered injury "[a]s the direct and proximate result of Defendants' actions," (¶ 108), the remainder of the allegations in Count I focus solely on Officer Doyle's conduct.  Because there are no specific allegations of wrongdoing by the City of Huber Heights, by Sergeant Doe or by Chief Schommer, the Court construes Count I to assert a claim against only Officer Doyle.[1]

Third, without citing any specific provisions, Plaintiffs allege violations of "comparable portions of the Ohio Constitution."  Plaintiffs, however, now concede that, because § 1983 offers "sufficiently broad and inclusive remedies" for the same alleged wrongs, there is no private remedy for alleged violations of the Ohio

---

[1]  The Court notes that Count III of the Amended Complaint asserts claims of supervisory liability against Chief Schommer and Sergeant Doe, and municipal liability against the City.

Constitution.  *See Provens v. Stark Cnty. Bd. of Mental Retardation &*
*Developmental Disabilities*, 64 Ohio St. 3d 252, 261, 594 N.E.2d 959, 966 (Ohio
1992).  Accordingly, the Court dismisses those portions of Count I that are based
on alleged violations of the Ohio Constitution.

This brings us to the heart of the claims alleged in Count I.  Laning alleges
that by "illegally stopping, seizing, detaining, and arresting" her, Officer Doyle
violated her Fourth Amendment rights to be free from arrest without probable
cause, and from unreasonable search and seizure.[2]  Doc. #19, PageID#168.

### B.    Qualified Immunity

Officer Doyle maintains that he is entitled to qualified immunity on this
claim.  Plaintiffs bear the burden of showing that Doyle is *not* entitled to qualified
immunity.  *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006).

The doctrine of qualified immunity shields government officials from liability
for civil damages for actions taken in the scope of their duties, unless their conduct
violates "clearly established statutory or constitutional rights of which a reasonable
person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
Rather than being a "mere defense to liability," it provides "an immunity from suit."
*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The doctrine operates "to ensure
that before they are subjected to suit, officers are on notice their conduct is

---

[2]  Although Count I also alleges that Doyle violated Laning's constitutional right to
be free from "summary punishment," and from "arbitrary governmental activity
that shocks the conscience of a civilized society," Doc. #19, PageID#169,
Plaintiffs have now conceded that they "are not pursuing due process and cruel
and unusual punishment claims."  Doc. #31, PageID#287.

11

unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001). "Qualified immunity gives

government officials breathing room to make reasonable but mistaken judgments,"

and, "when properly applied, protects 'all but the plainly incompetent or those who

knowingly violate the law.'" *Ashcroft v. al–Kidd*, 131 S. Ct. 2074, 2085 (2011)

(quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

> To determine whether a government official is entitled to qualified immunity, we consider the two-part test described in *Saucier v. Katz*, which asks whether "a constitutional right would have been violated on the facts alleged" and, if so, whether the right was "clearly established." 533 U.S. 194, 200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). We are free to address the second question first, analyzing whether the constitutional right that purportedly prohibited a defendant's conduct was clearly established, without addressing whether there was a constitutional violation at all. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

*Occupy Nashville v. Haslam*, 769 F.3d 434, 442 (6th Cir. 2014).[3]

### 1. Constitutional Violation

"[A]n arrest without probable cause constitutes an unreasonable seizure in

violation of the Fourth Amendment." *Ingram v. City of Columbus*, 185 F.3d 579,

592-93 (6th Cir. 1999). "'[P]robable cause' to justify an arrest means facts and

circumstances within the officer's knowledge that are sufficient to warrant a

prudent person, or one of reasonable caution, in believing, in the circumstances

shown, that the suspect has committed, is committing, or is about to commit an

offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

_____

[3] In this case, although the second question is dispositive with respect to Count I, the Court also addresses the first question, because the issue of probable cause is also relevant to other Counts asserted in the Amended Complaint.

To determine whether an officer had probable cause to arrest someone for violation of a state statute, courts normally look to state law defining the offense. *Id.* at 36 ("Whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law"). *See also Ingram*, 185 F.3d at 594 ("To determine whether officers had probable cause to arrest an individual, we must look to the law of the jurisdiction at the time of the occurrence.").

At issue here is whether Officer Doyle had probable cause to arrest Laning for failing to comply with an order or signal of a police officer.[4]  Ohio law provides as follows:

> (A) No person shall fail to comply with any lawful order or direction of any police officer invested with authority to direct, control, or regulate traffic.
>
> (B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.
>
> (C)(1) Whoever violates this section is guilty of failure to comply with an order or signal of a police officer.

Ohio Rev. Code § 2921.331.  The Court takes judicial notice that Laning was charged with a violation of § 2921.331(B), in Montgomery County Municipal Court Case No. 2013CRB00021.

The Amended Complaint alleges that Officer Doyle followed Laning into the strip mall parking lot and then activated the cruiser's overhead lights.  Laning

---

[4]  Laning was also charged with resisting arrest.  However, because "lawful arrest" is an element of that crime, *see* Ohio Revised Code § 2921.33(A), the threshold inquiry is whether Doyle had probable cause to arrest Laning for failing to comply with his order or signal.

admits that after she saw the flashing lights, she continued driving through the parking lot "a short distance, at a low speed, to avoid impeding traffic or jeopardizing pedestrian safety."  She then "backed her vehicle into a parking space very close to her office."  She specifically denies making any attempt to flee or elude Officer Doyle, and maintains that he would not have reasonably interpreted her actions as such.  Doc. #19, PageID#162.

The fact that Laning failed to stop immediately after Officer Doyle activated the lights on his cruiser is not determinative.  Rather, subsection (B) of the statute is violated only if the driver operates the vehicle "so as willfully to elude or flee" a police officer.  *See City of Columbus v. Fantozzi*, Nos. 80AP-737 through 80AP-740, 1981 WL 3046, at *7 (Ohio Ct. App. Mar. 10, 1981) (Whiteside, J., concurring in part and dissenting in part) ("For whatever reason, the Legislature did not see fit to prohibit merely failing to stop after receiving a visible or audible signal from a police officer to do so.").

Laning's allegations do give rise to an inference that her conduct was "willful," given that she purposely kept driving even after she knew that Officer Doyle signaled her to stop.  *See State v. Garrard*, 170 Ohio App. 3d 487, 496, 867 N.E.2d 887, 893 (Ohio Ct. App. 2007) (holding that the term "willfully," as used in § 2921.331(B), means "purposely").  However, viewed in the light most favorable to Laning, the allegations do not support a finding that Officer Doyle had probable cause to believe that she was attempting to flee or to elude him.

14

The term "flee," as used in the statute, "is not dependent on duration or distance," *id.* at 499, 867 N.E.2d at 896, but it "does connote haste and swiftness." *State v. Donkers*, 170 Ohio App. 3d 509, 537, 867 N.E.2d 903, 925 (Ohio Ct. App. 2007).  Here, however, Laning alleges that she continued driving through the parking lot "at low speed."  To "elude" a police officer is "to avoid slyly or adroitly (as by artifice, stratagem, or dexterity)." *Id.* (quoting Webster's Third New International Dictionary).  Here, the incident in question took place in a strip mall parking lot.  Laning maintains that she did not stop immediately because she did not want to impede traffic or jeopardize pedestrian safety.  She instead continued driving a short distance through the parking lot to her office, where she backed into a parking space and then stepped out of the car.  Although she may not have stopped her car as quickly as Officer Doyle would have liked, there is no indication that she was trying to "elude" him.

Viewing the allegations in the Amended Complaint in the light most favorable to Laning, it appears to the Court that Officer Doyle lacked probable cause to arrest her for a violation of Ohio Revised Code § 2921.331(B).[5]  The facts alleged do not support a finding that she was willfully attempting to elude Officer

---

[5]  The Court rejects Laning's argument that the fact that the prosecutor ultimately dismissed the charge proves that Officer Doyle lacked probable cause for the arrest. *See Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 638 (6th Cir. 2004) ("An arrest grounded in probable cause does not become invalid merely because the State chooses not to prosecute the individual or a jury opts for acquittal."); *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990) ("That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself.").

Doyle or flee from him. Because her Fourth Amendment rights would have been violated on the facts alleged, the Court must then turn to the second prong of the qualified immunity test, and determine whether the right at issue was clearly established.

## 2. Clearly Established Law

Laning maintains that she had a clearly established right not to be arrested without probable cause. While undoubtedly true, this is not the relevant question. As the Supreme Court recently held, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083-84 (2011)). An officer is entitled to qualified immunity unless existing precedent "'placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id.* The "crucial question" is "whether the official acted reasonably in the particular circumstances that he or she faced." *Id.*

In determining "whether an officer could reasonably conclude that probable cause exists under a given set of circumstances," the court imputes "knowledge of state-law definitions and state-court interpretations of a statute to police officers." *Pritchard v. Hamilton Twp. Bd. of Trs.*, 424 F. App'x 492, 506 (6th Cir. 2011). *See also Hutten v. Knight*, 3:10-cv-105, 2012 WL 246302, at *7 (M.D. Tenn. Jan. 26, 2012) ("to determine the extent to which the right is clearly established,

16

courts will consider cases decided prior to the arrest that interpret the state law at issue").

In this case, because the contours of the right at issue were not clearly defined, a police officer could have reasonably believed that he had probable cause to arrest Laning for a violation of Ohio Revised Code § 2921.331(B). Ohio courts have adopted the ordinary dictionary definitions of "flee" and "elude." *See Donkers*, 170 Ohio App. 3d at 537, 867 N.E.2d at 925. However, application of these definitions to factual scenarios somewhat similar to Laning's has led to varied results.

There are very few cases on point. The most similar case is unreported, and therefore has little precedential value. In *State v. Jackson*, 2d Dist. No. 21300, 2006 WL 1047468 (Ohio Ct. App. Apr. 21, 2006), a police officer initiated a traffic stop by activating the lights on his cruiser. The driver saw the officer, but continued slowly driving two more blocks until he reached his house. When he exited his car, he was arrested for willfully eluding or fleeing a police officer in violation of § 2921.331(B), and it was discovered that he did not have a valid driver's license. The trial court granted his motion to suppress the evidence, a decision affirmed on appeal. This was based on a finding that there was no reasonable basis for the initial traffic stop, and no basis for suspecting that he was attempting to elude the officer or flee from him "as opposed to choosing a suitable spot to stop after proceeding a short distance at a reasonable speed." *Id.* at *4.

In *Donkers*, the court rejected appellant's argument that there was insufficient evidence to support her conviction for willfully eluding the police. There, after the police ordered the appellant to pull over, she slowed down, but continued to drive for three miles before stopping. Although she claimed that she was simply looking for a safe place to pull off the road, the court held that a reasonable jury could have found that she was willfully eluding the police. 170 Ohio App. 3d at 537, 867 N.E.2d at 925. *Donkers* is distinguishable in that the appellant was on the highway and drove much farther than Laning did before stopping her car.

Defendants rely heavily on *State v. Adams*, 2d Dist. No. 24184, 2011 WL 3557842 (Ohio Ct. App. Aug. 12, 2011). In *Adams*, another unreported case, the police initiated a traffic stop by activating the cruiser's lights and siren. The driver did not immediately stop, but proceeded another block, where another vehicle stopped him from proceeding any further. He was arrested for a violation of § 2921.331(A). Heroin was found during the course of an inventory search of the car. The defendant moved to suppress the evidence, alleging that the officer lacked probable cause to stop him for a traffic violation. The trial court overruled the motion.

On appeal, the court held that, regardless of whether there was probable cause to stop the driver for the alleged traffic violation, the inventory search was proper because there was probable cause to arrest him for failing to comply with the order of a police officer. *Id.* at *4. It is not clear why Adams was charged

with a violation of § 2921.331(A) rather than § 2921.331(B). Nevertheless, because a different subsection of the statute is implicated, and Adams was not charged with willfully eluding or fleeing a police officer, this case is of limited precedential value.

In short, there are few, if any, reported cases that would have given Officer Doyle guidance in determining whether there was probable cause to believe that Laning's specific conduct violated Ohio Revised Code § 2921.331(B). A police officer could have therefore reasonably believed that probable cause existed for the arrest. Because the legal contours of the right in question were not clearly established, Officer Doyle is entitled to qualified immunity on Laning's § 1983 claims stemming from her alleged wrongful arrest and the inventory search conducted incident to that arrest. Count I of the Amended Complaint will therefore be dismissed with prejudice.

**2.    Count II:  "42 U.S.C. § 1983 - Unreasonable and Excessive Force (Violations of the Fourth Amendment to the United States Constitution, as well as comparable portions of the Ohio Constitution)"**

Count II of the Amended Complaint alleges that Officer Doyle, acting under color of state law, used gratuitous, excessive and unreasonable force during the course of the arrest, in violation of the Fourth Amendment and comparable portions of the Ohio Constitution. For the same reasons discussed above, the Court dismisses with prejudice those portions of Count II that are based on alleged violations of the Ohio Constitution.

19

Likewise, although Laning again alleges that "Defendants" acted maliciously or with deliberate indifference to her constitutional rights, causing her to suffer injury and damages, Doc. #19, PageID#169, Count II contains no specific allegations of wrongdoing by Chief Schommer, Sergeant Doe, or the City of Huber Heights.  The Court therefore construes this claim as one asserted only against Officer Doyle in his individual capacity.

Officer Doyle again argues that he is entitled to qualified immunity.  He maintains that, because the amount of force he used was objectively reasonable under the circumstances, there is no Fourth Amendment violation.  *See, e.g., Slusher v. Carson*, 540 F.3d 449, 453-54 (6th Cir. 2008).

In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court explained that "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them.  *Id.* at 397.  The reasonableness of the use of force must be gauged by the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396.

Viewing the allegations of the Amended Complaint in the light most favorable to Laning, the Court finds that Laning's Fourth Amendment rights were likely implicated.  Laning, age 63, was allegedly pulled over for a minor traffic violation.  After Officer Doyle activated the lights on his cruiser, she drove a short distance through a parking lot at a slow speed, parked her car outside her office,

and stepped out of the car.  She maintains that she posed no safety risk to anyone.  She alleges that Officer Doyle immediately began shouting commands at her.  When she asked why he had pulled her over, he refused to answer.  Instead, he drew his taser and pointed it directly at her.  She alleges that, even though she stood motionless and offered no resistance, Officer Doyle "yanked her up off her feet, and slung her toward the cruiser, slamming her up against its hood with her feet still up off the ground."  While handcuffing her, he allegedly "pressed his whole body weight up against" her.  She alleges that she suffered damaged cartilage, bruising and serious physical injuries.  Doc. #19, PageID#162-63.  In the Court's view, these allegations state a plausible claim of excessive force.

Moreover, Laning had a clearly established right to be free from the use of gratuitous violence during the course of the arrest.  *See Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006) ("Cases in this circuit clearly establish the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest").

For these reasons, the Court finds that Officer Doyle is not entitled to qualified immunity on Count II of the Amended Complaint.

**3.    Count III:  "Municipal and Supervisory Liability (Section 1983, the Fourth Amendment[] to the United States Constitution and the Constitutional and common law of the State of Ohio)"**

Count III of the Amended Complaint seeks to hold the City of Huber Heights, Chief Schommer and Sergeant Doe liable for damages Plaintiffs suffered as a result of Officer Doyle's alleged misconduct.  Again, to the extent that Plaintiffs' claim is

based on alleged violations of the Ohio Constitution, that portion of the claim is dismissed for the reasons stated above.

### a. Claims against City

To the extent that Plaintiffs assert any claims against the City of Huber Heights based on the common law of the State of Ohio, the City argues that it is entitled to statutory immunity pursuant to Ohio Revised Code § 2744.02. Plaintiffs have conceded that they no longer intend to pursue any such state law claims.  Accordingly, this portion of Count III is also dismissed with prejudice.

The Court turns then to the § 1983 claims asserted against the City.  A municipality cannot be held liable under § 1983 merely because it employs an individual who engages in unconstitutional conduct.  Rather, plaintiffs must prove that a policy or custom of the municipality was the "moving force" behind the alleged constitutional violation.  *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978).  Such a policy or custom may consist of: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Here, Plaintiffs' allegations against the City are based on a policy of inadequate training or supervision, and a custom of tolerating federal civil rights violations.  Plaintiffs allege that, although the City was aware that Officer Doyle and other officers engaged in a pattern of First and Fourth Amendment violations,

22

it failed to adequately train, supervise and discipline them, and failed to adequately investigate complaints of constitutional violations.

Plaintiffs allege that the training provided to the police officers "was inadequate with respect to search, detention, arrest and use of force" and that this inadequacy was the result of deliberate indifference. Doc. #19, PageID#171. They further allege that the officers are inadequately trained concerning the right of citizens to question the police without retaliation. *Id.* at PageID#172. Defendants argue that these conclusory allegations are insufficient to state a claim against the City, particularly in light of the pleading standards set forth in *Iqbal* and *Twombly*.

In *Connick v. Thompson*, 131 S. Ct. 1350 (2011), the Supreme Court noted that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." The failure to train must amount to a "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* at 1359 (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Usually, a plaintiff must establish "deliberate indifference" by showing "[a] pattern of similar constitutional violations by untrained employees." *Id.* at 1360. *See also Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) ("A failure-to-train claim . . . requires a showing of 'prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse and was clearly on notice that training in this particular area was deficient and likely to

cause injury.").[6]  Plaintiffs must allege facts sufficient to show that there was a "clear and persistent pattern of unconstitutional conduct by municipal employees." *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014).  Likewise, in order to establish a custom of tolerance or acquiescence of federal rights violations, a plaintiff must show "that there was a pattern of inadequately investigating similar claims." *Burgess*, 735 F.3d at 478.

With respect to prior instances of unconstitutional conduct, the Amended Complaint alleges that the City knew of Officer Doyle's propensity to engage in unconstitutional conduct "because of internal complaints and at least one other lawsuit filed against Doyle." *Id.* at PageID#170.  Plaintiffs, however, fail to cite to any specific internal complaints filed against Doyle, and say nothing of how those internal complaints were resolved.

Defendants argue that unsubstantiated accusations of wrongdoing, whether asserted in an internal complaint or a lawsuit, are generally insufficient to establish deliberate indifference.  *See, e.g.*, *Carter v. District of Columbia*, 795 F.2d 116, 123 (D.C. Cir. 1986) (holding that unsubstantiated allegations of wrongdoing cannot support a finding of municipal liability); *Owens v. City of Ft. Lauderdale*, 174 F. Supp. 2d 1282, 1296-97 (S.D. Fla. 2001) (holding that where complaints are wholly unsubstantiated, they are of "little value for purposes of establishing previous constitutional violations" on which municipal liability may be imposed).

───────────────────────

[6]  In very rare instances, when the need for training in a specific area is very obvious, the plaintiff may be able to establish deliberate indifference based on a single incident.  *Connick*, 131 S. Ct. at 1361.

Citing *Miller v. Delaware County Commissioners*, No. 2:13-cv-501, 2014 WL 457552 (S.D. Ohio Feb. 4, 2014), Defendants further argue that the doors to discovery are not opened by conclusory allegations. *Id.* at *9 (finding that *Iqbal* and *Twombly* preclude argument that, without the benefit of some discovery, plaintiffs could not be expected to provide more than conclusory allegations of a pattern of constitutional violations).[7]

Plaintiffs argue, however, that they should be entitled to conduct discovery to flesh out these claims of municipal liability.  The Court agrees.  Plaintiffs' allegations in this case go beyond conclusory allegations of inadequate training or a pattern of unconstitutional behavior.  Plaintiffs have specifically alleged that Officer Doyle has been the subject of "internal complaints and at least one other lawsuit."  Plaintiffs further allege that the City knew about these complaints, and yet failed to take any remedial action.  Doc. #19, PageID##170-71.  In the Court's view, these factual allegations satisfy the requirements of *Iqbal* and *Twombly*, and state a plausible claim against the City.

Whether Plaintiffs will be able to prevail on this claim, or even survive summary judgment, remains to be seen.  However, the Court agrees that, at a minimum, Plaintiffs are entitled to discovery.  In *Scott v. Giant Eagle, Inc.*, No. 1:12-cv-3074, 2013 WL 1874853 (N.D. Ohio May 3, 2013), the court noted that "applying *Iqbal* too strictly in situations where knowledge of a custom, policy, or

---

[7]  In *Miller*, plaintiffs alleged only that inadequate training caused the "botched investigation" that led to the illegal arrest. 2014 WL 457552, at *8.

practice is unobtainable absent some preliminary discovery could lead to unfair results." *Id.* at *4 (citing *Hutchinson v. Metropolitan Gov't of Nashville and Davidson County*, 685 F. Supp. 2d 747, 751-52 (M.D. Tenn. 2010)).  This is particularly true when the evidence needed is within the exclusive, or almost exclusive, possession of the opposing party.  Accordingly, the Court overrules Defendants' motion to dismiss the § 1983 claim asserted against the City of Huber Heights.

### b. Claims against Chief Schommer and Sergeant John Doe

Defendant Robert Schommer is the Chief of Police for the City of Huber Heights, and Defendant Sergeant John Doe is Officer Doyle's direct supervisor.[8] Plaintiffs seek to hold Chief Schommer and Sergeant John Doe personally liable under § 1983 for their alleged roles in failing to adequately train, supervise, and discipline Officer Doyle.  Plaintiffs allege that Schommer and Doe knew of Doyle's history of violating the constitutional rights of citizens within his jurisdiction, and failed to take any remedial action.  They further allege that Schommer and Doe failed to adequately investigate Laning's complaint of Doyle's misconduct.

Defendants argue that they are entitled to qualified immunity on these claims, because a supervisor cannot be held liable unless he was actively and

---

[8]  Federal Rule of Civil Procedure 4(m) requires all defendants to be served within 120 days of filing the Complaint.  Here, it appears that Plaintiffs have failed to identify the John Doe defendant, substitute him as a party, and serve him within the time allotted.  Plaintiffs' claims against Sergeant Doe are subject to dismissal without prejudice on this basis.  However, this is a moot point, since the claims are also subject to dismissal on qualified immunity grounds.

personally involved in the alleged constitutional violation.  "Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. . . and cannot be based upon simple negligence." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999).

As the court explained in *McQueen v. Beecher Community Schools*, 433 F.3d 460 (6th Cir. 2006):

> "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.' " *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)). "At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id*. (quoting *Hays*, 668 F.2d at 874).

*McQueen*, 433 F.3d at 470.  *See also Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) ("Plaintiff must show that the supervisors somehow encouraged or condoned the actions of their inferiors"); *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 544 (6th Cir. 2008) ("While an individual supervisor may still be held liable under a failure-to-train theory, the [plaintiff] must point to a specific action of each individual supervisor to defeat a qualified immunity claim.").

In this case, Plaintiffs' Amended Complaint is devoid of any allegations that Chief Schommer or Sergeant John Doe directly participated in Laning's arrest, or in any way encouraged Doyle to engage in the alleged unconstitutional conduct. Although Plaintiffs allege that Sergeant Doe appeared at the scene following the arrest, they do not allege that he played an active part in it.  Rather, they allege

27

only that he "failed to investigate the circumstances of the stop." Doc. #19, PageID#164.  Likewise, Plaintiffs allege that, although Schommer and Doe knew of Officer Doyle's propensity to engage in misconduct, they failed to take appropriate measures to avoid "foreseeable and highly predictable consequences." Doc. #19, PageID#170.

These allegations are insufficient as a matter of law to state a viable claim against them.  So are the allegations that Schommer and Doe failed to adequately investigate Laning's complaint about Doyle. *See Turner v. City of Taylor*, 412 F.3d 629, 649 (6th Cir. 2005) (holding that a claim that an officer's supervisor conducted an inadequate investigation into a complaint filed by plaintiff "may sound in negligence, but is not a constitutional tort.").  Accordingly, the Court dismisses all claims asserted against Chief Schommer and Sergeant John Doe in their individual capacities.

### 4.    Count IV:  "Malicious Prosecution (Violations of the Fourth Amendment to the United States Constitution, as well as comparable portions of the Ohio Constitution)"

Count IV of the Amended Complaint asserts a claim of malicious prosecution against Officer Doyle.  Again, Laning alleges violations of her federal and state constitutional rights but, because § 1983 offers a sufficient remedy, the Court dismisses those portions of this claim that are based on alleged violations of the Ohio Constitution.

A Fourth Amendment malicious prosecution claim "remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal

28

process." *Wallace v. Kato*, 549 U.S. 384, 390 (2007) (emphasis original).  In

order to succeed on a malicious prosecution claim under § 1983, Laning must

prove that: (1) a criminal prosecution was initiated against her, and Doyle made or

influenced the decision to prosecute; (2) there was no probable cause to support

the criminal prosecution; (3) she suffered a deprivation of liberty, apart from the

initial seizure; and (4) the criminal proceeding was resolved in her favor.  *Sykes v.

Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010).

Officer Doyle asserts the defense of qualified immunity, again arguing that

he had probable cause to arrest Laning for a violation of § 2921.331, and that

there was no clearly established law indicating that prosecution for this crime

would be improper.

The question of whether probable cause existed for an arrest is not exactly

the same as the question of whether probable cause existed for a criminal

prosecution.  *See Sykes*, 625 F.3d at 310-11 (distinguishing a § 1983 false arrest

claim from a § 1983 malicious prosecution claim).  Nevertheless, they are closely

related.

As previously noted, because the law was not clearly established, a

reasonable officer could have believed that probable cause existed to arrest Laning

for a violation of Ohio Revised Code § 2921.331(B).  For the same reasons, a

reasonable officer could have believed that probable cause existed to prosecute her

for this crime. *See id.* Accordingly, Officer Doyle is also entitled to qualified immunity on this claim, which will be dismissed with prejudice.[9]

      **5.    Count V: "False Arrest (Violations of the Fourth Amendment to the United States Constitution, as well as comparable portions of the Ohio Constitution)"**

Count V of the Amended Complaint is largely duplicative of Count I. It alleges that Officer Doyle arrested Laning without probable cause and confined her without justification, in violation of the Fourth Amendment and comparable portions of the Ohio Constitution. For reasons discussed above, the Court dismisses those portions of this claim that are based on alleged violations of the Ohio Constitution.

Officer Doyle argues that he is entitled to qualified immunity on the federal constitutional claim. Having previously determined that Officer Doyle's conduct in arresting Laning for a violation of § 2921.331(B) did not violate clearly established rights of which a reasonable officer would have known, the Court likewise finds that Officer Doyle is entitled to qualified immunity on this claim. Count V of the Amended Complaint is therefore dismissed with prejudice.

———————————————

[9] The Court also notes that, according to the Amended Complaint, Laning was detained for just 6 hours, and released after she posted bond. The criminal charges were then dismissed, and she was acquitted of the traffic violation charge. Doc. #19, PageID#166. Based on these facts, the Court questions whether she has adequately alleged "a deprivation of liberty, apart from the initial seizure." *See Sykes*, 625 F.3d at 308-09 (holding that, in order to satisfy the third element of a claim of malicious prosecution, "the plaintiff must show that *as a consequence of a legal proceeding*, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure") (internal quotations omitted) (emphasis added).

30

**6.    Count VI:  "Retaliation in Violation of the First Amendment ([42] U.S.C. Section 1983)"**

Count VI of the Amended Complaint alleges that Officer Doyle violated Laning's First Amendment right to freedom of speech when he arrested her, detained her, bullied her, and intimidated her, in retaliation for questioning him about why he had stopped her.  Doyle again contends that he is entitled to qualified immunity on this claim.

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Viewed in the light most favorable to Laning, the allegations in the Amended Complaint support a finding that Officer Doyle violated her First Amendment rights. She engaged in constitutionally protected conduct when she questioned why he had pulled her over. *See McCurdy v. Montgomery Cnty.*, 240 F.3d 512, 520 (6th Cir. 2001) ("freedom to express disagreement with state action, without fear of reprisal based on the expression, is unequivocally among the protections provided by the First Amendment").  Moreover, an arrest, particularly one accompanied by bullying behavior, would surely deter a reasonable person from exercising the right to verbally challenge the actions of a police officer. *See Center for Bio-Ethical*

31

*Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir. 2007).  Laning

also alleges that Doyle's conduct was substantially motivated by her protected

conduct.  Although Doyle's true motivation will ultimately have to be decided by a

jury, the facts alleged give rise to an inference that Laning's verbal challenges were

a motivating factor in Doyle's decision to arrest and detain her, and to treat her the

way he allegedly did.

As to the second prong of the qualified immunity analysis, the right to be

free from retaliatory arrest after verbally challenging police action was clearly

established at the time this incident took place.  *See Kennedy v. City of Villa Hills,*

*Ky.*, 635 F.3d 210, 219 (6th Cir. 2011).

The Court rejects Doyle's attempts to interject the issue of probable cause

into the qualified immunity analysis on this First Amendment claim.  Relying on

*Barnes v. Wright*, 449 F.3d 709, 719-20 (6th Cir. 2006), Officer Doyle argues that

because Laning's arrest was supported by probable cause, there can be no First

Amendment violation and that he is, therefore, entitled to qualified immunity on

this claim.   Citing *Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012), he further

argues that, at the time of Laning's arrest, she did not have a clearly established

right "to be free from a retaliatory arrest that is otherwise supported by probable

cause."

Even momentarily setting aside the Court's previous finding that, viewing

the facts in the light most favorable to Laning, Officer Doyle did *not* have probable

cause to arrest her for a violation of Ohio Revised Code § 2921.331(B), Doyle's

arguments still lack merit.  In *Hartman v. Moore*, 547 U.S. 250 (2006), the

Supreme Court held that lack of probable cause was an element of a retaliatory

*prosecution* claim.  However, neither the Supreme Court nor the Sixth Circuit has

yet held that lack of probable cause is a required element in a First Amendment

claim of retaliatory *arrest*.[10]  As explained in *Reichle*, retaliatory prosecution claims

are distinguishable from retaliatory arrest claims because "the intervening decision

of the third-party prosecutor widens the causal gap between the defendant's

animus and the plaintiff's injury." 132 S. Ct. at 2095.

In *Barnes*, the Sixth Circuit held that the plaintiff's First Amendment

retaliation claim failed because the officers had probable cause to seek an

indictment and arrest the plaintiff.  However, that case is factually distinguishable

because, as the court noted, "the officers themselves initiated the grand jury

proceedings," and the plaintiff was arrested following the indictment.  449 F.3d at

720.

In cases involving a "commonplace" claim of retaliatory arrest prior to

prosecution, the Sixth Circuit has subsequently twice deferred resolution of the

issue of whether lack of probable cause is a required element.  *See Leonard v.

Kennedy*, 477 F.3d 347, 355 (6th Cir. 2007) (finding probable cause to be

relevant to causation, but not deciding whether *Hartman* "adds another element to

_____

[10]    Although the Supreme Court granted certiorari to consider that question in
*Reichle*, it ultimately decided not to address it, instead holding only that qualified
immunity was warranted because, at the time of the arrest in question, the law
was not clearly established.  *Reichle*, 132 S. Ct. at 2093.

33

every First Amendment claim"); *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 217 n.4 (6th Cir. 2011) (distinguishing *Barnes* and again deferring resolution of the issue).

In short, the lack of probable cause is not yet a recognized element of a First Amendment claim of retaliatory arrest. *See Somers v. Charter Twp. of Clayton Police Dep't*, No. 10-11123, 2014 WL 897353, at *7-8 (E.D. Mich. Mar. 6, 2014). Moreover, the fact that the law concerning *this* particular issue is unsettled is largely irrelevant to the qualified immunity analysis. *See Hutten v. Knight*, No. 3:10-cv-105, 2012 WL 246302, at *8-9 (M.D. Tenn. Jan. 26, 2012).

Viewed in the light most favorable to Laning, the allegations in the Amended Complaint support a finding that Officer Doyle's conduct violated Laning's clearly established right to be free from retaliatory arrest for verbally challenging his conduct. Accordingly, Officer Doyle is not entitled to qualified immunity on the First Amendment claim of retaliatory arrest.

**7.    Count VII:  "Assault and Battery (42 U.S.C. 1983)"**

Count VII of the Amended Complaint asserts a claim of Assault and Battery against all Defendants under federal law. After Defendants argued that this tort claim is not cognizable under § 1983, Plaintiffs voluntarily abandoned it. Accordingly, the Court dismisses Count VII with prejudice.

34

**8.    Count VIII:  "Assault and Battery (Pendent [Supplemental] claims of assault and battery under Ohio law)"**

Count VIII of the Amended Complaint alleges that Officer Doyle willfully threatened and attempted to harm and touch Laning without privilege to do so, and offensively and reasonably placed her in fear of such contact.  It also alleges that Doyle actually did harm and touch her in such a manner, causing injury and damages.

Officer Doyle argues that he is entitled to statutory immunity under Ohio Revised Code § 2744.03(A)(6) because (1) his acts were not manifestly outside the scope of his employment; (2) civil liability is not expressly imposed by another section of the Revised Code; and (3) even though the Amended Complaint alleges that he acted maliciously, in bad faith, wantonly, or recklessly, the factual allegations support no such finding.

The Court disagrees.  Laning alleges that as soon as she stepped out of the car, Officer Doyle drew his taser and pointed it directly at her, terrifying her.  She further alleges that, without provocation, he charged toward her, forcibly jerked her arms behind her back, yanked her up off her feet and slammed her against the hood of the cruiser, pressing his whole body weight against hers, causing physical and emotional injury.  These allegations, if believed, could support a finding that he acted maliciously, in bad faith, wantonly or recklessly.  At this juncture, the allegations state a plausible basis for abrogating statutory immunity.  Accordingly, the Court denies Defendants' motion as to Count VIII.

35

### 9. Count IX: "Loss of Consortium (Pendent [Supplemental] claim under Ohio state law)"

In Count IX of the Amended Complaint, Mr. Laning asserts a claim of loss of consortium under Ohio law. Defendants correctly note that this is a derivative claim, dependent on the viability of the primary claims. *Wang v. Goodyear Tire & Rubber Co.*, 68 Ohio App. 3d 13, 19, 587 N.E.2d 387, 391 (Ohio Ct. App. 1990). In this case, however, because some of Plaintiffs' primary claims survive Defendants' motion, this one does as well.

### 10. Count X: "Intentional Infliction of Emotional Distress (Federal and State Claim)"

Count X of the Amended Complaint asserts federal and state claims of intentional infliction of emotional distress against Officer Doyle. Doyle argues that the federal portion of this claim must be dismissed because there is no such common law claim under federal law. *FDIC v. Rusconi*, 808 F. Supp. 30, 44 n.25 (D. Me. 1992) ("Courts have held that no federal common law exists regarding claims for infliction of emotional distress; rather, such claims are based on state common law.").

Plaintiffs disagree, citing to a couple of cases in which courts have noted that a plaintiff threatened with physical injury may recover damages under § 1983 for mental distress in situations involving a malicious abuse of power that shocks the conscience. *See Checki v. Webb*, 785 F.2d 534, 538 (5th Cir. 1986) (noting that a police officer who terrorizes a citizen by brandishing a cocked gun in his face has "laid the building blocks for a section 1983 claim against him"); *White*

36

*v. Rochford*, 592 F.2d 381, 384-85 (7th Cir. 1979) (holding that leaving children in abandoned car, subjecting them to inclement weather and great physical danger, could violate the Due Process Clause, giving rise to a § 1983 claim).

*Checki*, however, involved a question of venue. The statement that the Plaintiffs pull out of context does not stand for the proposition that a federal common law claim of intentional infliction of emotional distress exists. *White* is predicated on alleged violations of the Due Process Clause. In contrast, the Lanings have expressly denied pursuit of any due process claim.

Moreover, the fact that a plaintiff alleging a due process violation may be able to recover damages for mental distress in the context of a § 1983 suit does not mean that a separate federal cause of action exists for intentional infliction of emotional distress. Because Plaintiffs have failed to cite to any authority recognizing such a federal cause of action, the Court sustains Defendants' motion for judgment on the pleadings with respect to the federal portion of Count X.

Plaintiffs also assert a claim of intentional infliction of emotional distress under Ohio common law. Officer Doyle argues that Plaintiffs' factual allegations are insufficient to state a claim upon which relief can be granted. In the alternative, he argues that he is entitled to statutory immunity under Ohio Revised Code § 2744.03(A)(6). The Court rejects both of these arguments.

"To establish a claim for intentional infliction of emotional distress, a plaintiff must show that: (1) the defendant intended to cause the plaintiff serious emotional distress; (2) the defendant's conduct was extreme and outrageous; and (3) the

37

defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Tuleta v. Med. Mut. of Ohio*, 2014-Ohio-396, at ¶ 52 (citing *Phung v. Waste Mgt. Inc.*, 71 Ohio St. 3d 408, 410, 644 N.E.2d 286 (1994)).  Liability will be found only where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 374, 453 N.E.2d 666 (Ohio 1983).

Not surprisingly, the parties disagree about whether Plaintiffs' allegations are sufficient to state a claim.  Defendants cite to *Fannon v. Patterson*, No. 3:13-cv-14, 2014 WL 4273337, at *7 (S.D. Ohio Aug. 29, 2014), in which the court held that "mere arrest, detention and prosecution" does not support a claim of intentional infliction of emotional distress.

But Laning's allegations are much more egregious.  Laning, who was age 63 at the time, alleges that, although she was pulled over for a minor traffic violation, and did nothing to resist arrest, Officer Doyle threatened her with a taser, subjected her to excessive force during the course of the arrest, transported her to a remote area after the stop, and subjected her to numerous obnoxious comments. She further alleges that as a result of this incident, she suffers from post-traumatic stress disorder, and is afraid to drive.

"Unreasonable and inappropriate actions [by a police officer] do not automatically equate to extreme and outrageous conduct." *Gill v. Kovach*, 729 F. Supp. 2d 925, 941 (N.D. Ohio 2010).  Nevertheless, at this stage of the

38

proceedings, the Court finds that Laning's allegations are sufficient to render the claim plausible.  Moreover, if Laning's testimony is credited, a jury could also find that Officer Doyle acted with malice, in bad faith, wantonly or recklessly, sufficient to abrogate statutory immunity under Ohio Revised Code § 2744.03(A)(6).  Accordingly, the Court overrules Defendants' motion to dismiss the Ohio common law claim of intentional infliction of emotional distress.

### 11.    Punitive damages

In their prayer for relief, Plaintiffs request that punitive damages be awarded against Officer Doyle.  Doyle maintains that the facts alleged are insufficient to support an award of punitive damages, because they do not demonstrate that his conduct was motivated by malice or evil intent, or that he acted with reckless or callous indifference to Laning's federally protected rights.  *See Smith v. Wade*, 461 U.S. 30, 56 (1983).

Plaintiffs, however, have alleged malice, and reckless and callous indifference in connection with several of the remaining claims.  *See* Doc. #19, PageID##169, 174, 176.  For the same reasons set forth above, the Court cannot say that the factual allegations supporting the claim for punitive damages are insufficient as a matter of law.  As such, the Court declines to dismiss Plaintiffs' claim for punitive damages at this juncture.

**V.    Conclusion**

For the reasons set forth above, Defendants' Motion for Judgment on the

Pleadings, Doc. #23, is SUSTAINED IN PART and OVERRULED IN PART, as

follows:

- All claims against Chief Schommer and Sergeant John Doe (Count III), and all claims brought against Officer Doyle in his official capacity, are DISMISSED WITH PREJUDICE;

- The following claims brought against Officer Doyle in his individual capacity are DISMISSED WITH PREJUDICE:
  - Count I:      Unlawful Seizure, Detention, Search and Arrest
  - Count IV:    Malicious Prosecution
  - Count V:     False Arrest
  - Count VII:   Assault and Battery (federal claim)
  - Count X:     Intentional Infliction of Emotional Distress (federal claim)

- The following claims brought against Officer Doyle in his individual capacity remain pending:
  - Count II:      Excessive Force (42 U.S.C. § 1983)
  - Count VI:     Retaliatory Arrest (42 U.S.C. § 1983)
  - Count VIII:   Assault and Battery (state claim)
  - Count IX:     Loss of Consortium (state claim)
  - Count X:      Intentional Infliction of Emotional Distress (state claim)
  - Claim for compensatory and punitive damages

- The following claim brought against the City of Huber Heights remains pending:
  - Count III (42 U.S.C. § 1983 only)

Date: February 18, 2015

_____

WALTER H. RICE
UNITED STATES DISTRICT JUDGE